## Directors of Poor of Berks County *versus* Shingle.

A constable who executes an order of relief by conveying a pauper from a certain township to the county poor-house, is not entitled to the mileage allowed in conveying a pauper from the district where he has become chargeable to the district of his settlement under an order of removal.

February 28th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Berks county :* Of January Term 1877, No. 130.

This was an amicable action by Philip Shingle, against the directors of the poor of Berks county, wherein a case was stated which will be found, in effect, in the opinion of this court.

*Frank R. Schell,* for plaintiffs in error.

*John F. Smith* and *C. H. Ruhl,* for defendant in error.

Mr. Justice WOODWARD delivered the opinion of the court, May 7th 1877.

Philip Shingle, the plaintiff below, was constable of Union township in the year 1874. On the 7th of April in that year, an order was issued to him by two justices of the peace to convey Jacob Carver, of Amity township, a pauper, to the Berks County Poor House. In executing the order he charged mileage at the rate of fifteen cents per mile circular for the distance he was required to travel. The defendants below apparently admitted their liability for mileage at the rate of ten cents, for the case stipulated for a judgment of $5.40 if the claim for the larger rate was sustained, and for a judgment of $3.60 if the court should be of opinion that the plaintiff was not entitled to more than the lesser rate. The judgment below was entered for the whole amount of the plaintiff's claim.

While the sum in dispute is trifling, the question has some interest, as involving an inquiry into the general practice under the poor laws of the state, and, in the existing and prospective business condition of the community in which the duties of the defendants are performed, is of appreciable consequence to their treasury. The course of legislation on the general subject has been examined, therefore, as well as the deluge of fee-bill statutes that afflicted the Commonwealth from 1861 to 1873.

Both the townships of Union and Amity are in the county of Berks. The settlement of the pauper Carver was in Amity, and he was entitled to claim relief from the defendants. The order of the two justices was in the form prescribed, and under the jurisdiction conferred by the 16th section of the revised Act of the 13th of June 1836. As the Berks County Poor House Act of 29th of

[Directors of Poor of Berks County *v*. Shingle.]

March 1824 had been passed in the interval, it may be stated here that the entire substance of that section of the revised act was adapted from the 22d section of the Act of the 9th of March 1771. The provisions of the section were not intended to apply to the case of a pauper becoming chargeable within the district of his legal settlement, and having a claim on the authorities of that district for relief. The order of removal "to the city, district or place where he was last legally settled," was confined to the case of a person who had become or was likely to become "chargeable to the district into which he had come." There is no embarrassment in ascertaining the scope and purpose of this provision. By the express terms of the statute, as well as by common usage and settled professional interpretation, an order of removal is made the means by which a pauper is removed to the district of his settlement from the district where he has become chargeable, and on which he has no legal claim.

An order of relief to a settled pauper is a different thing. By the 9th section of the Act of 1771, it was directed that no person should be entered in the poor book of any borough or township, or receive relief, until an order from two magistrates or justices of the peace should be procured. This order was to be directed to the overseers, and the duty was imposed on them of taking charge of the pauper and providing for his wants. No service was required at the hands of a constable. The overseers were at liberty to exercise their discretion as to the place where, and the manner in which, relief should be afforded. Action under their direction was to be taken by agents of their selection, and not by ministerial officers of the law. The sixth section of the Act of 1836 contained substantially the same provision as the 9th section of the Act of 1771. Indeed, so far as any question involved in this inquiry is concerned, the systems established by the two statutes are essentially identical. As to the county of Berks, the general system under the Act of 1771, was changed by the Act of 9th of March 1824. By the 9th section of the last act the poor of the several townships were required to be transferred by the overseers to the directors as soon as proper buildings should be completed. The overseers were "to bring the poor of their respective townships to the house of employment," unless any poor person, from sickness or other sufficient cause, could not be removed. In that case, a certificate of a justice of the peace to the directors, and an order by him to the overseers, authorized maintenance in the township until the pauper should be in a situation to be removed, when the overseers were to convey and deliver him to the steward or keeper of the house of employment. The 14th section made it the duty of the directors to "receive, provide for, and employ all such poor and indigent persons as shall be entitled to relief, or shall have gained a legal settlement in the county of Berks;" and any such poor and indigent

person, the section added, " shall be admitted into the house of employment on an order for that purpose granted by any one of the directors or by a justice of the peace of the county, or upon a legal order of removal from any other county within this Commonwealth." With the exception of a supplement passed the 27th of March 1827, empowering the directors " to administer the necessary oaths and affirmations to paupers or other persons in the examination after the place of the last legal settlement of a pauper, and to issue the necessary orders for removal," no legislation has been found to modify the method of providing for the poor of the county of Berks prescribed by the Act of 1824. From the review of the statutes that has been made, it is manifest that the order of the two justices in this case was irregular and unauthorized, and that, except by virtue of his employment by the directors as their agent, the constable could assert no claim for compensation. It is manifest also that no law or usage, applicable to an order of removal, can be legitimately applied to an order of relief. The two proceedings have inherently different purposes to subserve. The unsettled pauper, in the ordinary case, is transferred *se invito*. The order for the relief of the settled pauper, in the ordinary case, is obtained on his own application, or on that of some one acting on his behalf. Even, therefore, if the view of the court below was accurate, that the law warranted, in executing an order of removal, the rate charged, the judgment was still erroneous, for fees allowed for services under such an order cannot be made by construction the measure of compensation for services under an order of relief.

It may be of no special importance here, but the item of fifteen cents for each mile circular, for travelling expenses in the removal of a pauper, allowed in the Act of 3d of April 1866, amending the fee bill as to constables in Philadelphia, was not embraced amongst the provisions of that act, which were extended to Berks by the Act of the 8th of April 1867. There was a special exception of all provisions relating " to the serving of subpœna, to sales on commission of goods levied or distrained, and to mileage." The reason operating on the mind of the judge which produced his decision, was not stated in the opinion, but the plaintiff's counsel in their argument insisted that the exclusion of " mileage" in the Act of 1867, did not refer to the "travelling expenses" on orders of removal allowed by the Act of 1866. In view of the terms of the statutes which have been almost invariably used in defining the rights of constables to fees, the ground thus taken has the peculiarity at least of novelty. In the fee bills established by the Act of the 22d of February 1821, by the Act of the 18th of April 1857, and by the Act of the 2d of April 1868, payment for " travelling expenses" and not for mileage in the execution of all kinds of process was allowed. "Mileage," *eo nomine*, was authorized only in the Act of 1857, and it was given there only for making returns to the

Court of Quarter Sessions.   In the very Act of 1866 itself, " travelling expenses" at different rates per mile were allowed in the performance of the different services prescribed.   The exception of " mileage" out of the Act of 1867, if it did not refer to the " travelling expenses" specified in the Act of 1866, was senseless and absurd.   The judgment of the court on this branch of the case, may have been right, nevertheless.   From the flood of loose and shifting special legislation, during the twelve years preceding the adoption of the Constitution of 1873, there is hazard in attempting to deduce a definite conclusion as to the state of any branch of local law ; but the act fixing the travelling allowance of constables in Berks county appears to be that of the 1st of April 1864.   That gives them fifteen cents a mile circular in executing an order of removal, and six cents in all other cases.   If the simple question were presented as to the plaintiff's right to recover, as constable, under the fee bill, it may be that the defendants would be entitled to a general judgment. At the utmost, it is probable that the rate fixed for ordinary process by the Act of 1864 would be the limit of his claim.   But the defendants have indicated their own estimate of the value of his services.   The case stated has provided for the alternative contingencies contemplated by the parties, and under its terms the plaintiff is entitled to be paid ten cents a mile.

The judgment is reversed, and judgment in favor of plaintiff below is entered for the sum of three dollars and sixty cents, in accordance with the terms of the case stated.